IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RALPH S. JANVEY, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:11-CV-1177-N |
| § | |
| LIBYAN INVESTMENT AUTHORITY, § | |
| *et al.*, § | |
| § | |
| Defendants. § | |

# **ORDER**

This Order addresses the Receiver's motion for preliminary injunction [2]. For the reasons that follow, the Court denies the Receiver's motion.[1]

## I. ORIGINS OF THE PRELIMINARY INJUNCTION REQUEST

This case presents another dispute arising out of the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control ("Stanford"). As part of that litigation, this Court "assume[d] exclusive jurisdiction and t[ook] possession" of the "Receivership Assets" and "Receivership Records" (collectively, the "Estate"). *See* Second

---

[1]The Court also grants the Receiver's motion for leave to file reply brief in excess of page limits [49], denies the Receiver's motion to strike declarations of Mohamed Layas and Nagmeddin Hemali Mokhtar [50], grants the Receiver's unopposed motion for leave to amend complaint [53], denies the Receiver's motion to strike [67], grants Defendants' motion to withdraw unauthorized filings and agreements [36], and denies Defendants' motion to reopen the evidentiary record [64]. As discussed in this Order, the Court does not consider any new evidence or arguments in the parties post-hearing briefs besides the research that the Court requested. *See infra* note 8. The Court orders the Receiver to file his amended complaint, amended only as requested, within seven (7) days of the date of this Order.

ORDER – PAGE 1

Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3.

Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate," *id.* at 5.

Pursuant to those powers, the Receiver filed this fraudulent transfer suit to recover approximately $55 to $101 million in alleged proceeds of Stanford International Bank, Ltd. ("SIB") certificates of deposit ("CDs") allegedly held by Defendants Libyan Investment Authority ("LIA") and Libyan Foreign Investment Company ("LFICO") (collectively the "Defendants"). The Receiver applied for a temporary restraining order ("TRO") freezing funds in the amount of $54,823,740.83 and moved for a preliminary injunction enjoining Defendants from dissipating those funds, currently held in accounts at Citibank, N.A. The

ORDER – PAGE 2

Court issued a TRO on June 6, 2011 [10] and conducted a hearing on the Receiver's motion for preliminary injunction on January 27, 2012.[2] At the hearing, the Court took the Receiver's motion for preliminary injunction under advisement and directed the parties to submit post-hearing briefs on a choice of law issue. Defendants' U.S.-based assets generally, including those at issue in this action, are currently frozen by an executive order entered by President Obama in response to the 2011 Libyan civil war. *See* Exec. Order No. 13,566, 76 Fed. Reg. 11,315 (Feb. 25, 2011).

## II. PRELIMINARY INJUNCTION STANDARD

The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A preliminary injunction is "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Harris Cnty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)). To obtain a preliminary injunction, the movant must establish the following: (1) a substantial threat that the movant will suffer irreparable injury if the Court denies the preliminary injunction; (2) that the potential injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; (3) a substantial likelihood that the movant will ultimately prevail on the merits; and (4) that granting the preliminary injunction will not disserve the

---

[2]The parties extended the TRO by agreement.

ORDER – PAGE 3

public interest. *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

The Court must balance the likelihood of success with the comparative injuries of the parties. *See Canal Auth.*, 489 F.2d at 576. The balancing that takes place "is often referred to as a 'sliding scale,'" 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.3, at 195 (2d ed. 1995), meaning that the movant's standard for showing a likelihood of success is lower where the hardship to the plaintiff is greater, *see Canal Auth.*, 489 F.2d at 576. However, extreme hardship does not eliminate the movant's burden to show a probability of success on the merits. *See id.*

### III. THE RECEIVER HAS NOT SHOWN THAT HE IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM

#### *A. The Court Must Perform a Veil-Piercing Analysis*

The Receiver centers his claim against Defendants on LFICO's investment in SIB CDs. The Receiver alleges that LFICO "knew or should have known" that Stanford was running a Ponzi scheme and that LFICO's knowledge precludes a good faith defense to liability under the Texas Uniform Fraudulent Transfer Act ("TUFTA").[3] The Court will assume that the Receiver is correct in his recitation of TUFTA law,[4] at least to the extent that

---

[3]The parties dispute whether Texas law applies to the Receiver's fraudulent transfer claims. *See, e.g.*, Defs.' Br. Opp'n to Receiver's Appl. Prelim. Inj. 9 [40]; Receiver's Reply Supp. Appl. Prelim. Inj. Against Libyan Inv. Auth. & Libyan Foreign Inv. Co. 28-31 [50]. However, because the Court concludes in this Order that the Receiver has not shown that LFICO is LIA's alter ego, an antecedent question, it is unnecessary for the Court to resolve this particular choice of law issue.

[4]*See, e.g.*, *Warfield v. Byron*, 436 F.3d 551, 558-560 (5th Cir. 2006) (stating that transfers from Ponzi schemes are presumptively fraudulent under TUFTA, so that nonmovant

Defendants' foreign status does not interfere.[5] However, here he seeks to "clawback" funds held by LIA, LFICO's sole shareholder, not funds held by LFICO itself. All parties agree that LIA did not invest in SIB CDs.

Under TUFTA, courts can hold liable both original transferees and persons "for whose benefit the transfer was made." *See* TEX. BUS. & COM. CODE § 24.009(b)(1). The Receiver argues that this provision eliminates the need to show that LFICO is LIA's alter ego in order

---

can preclude liability only by showing both reasonably equivalent value and objective good faith).

[5]Defendants argue that they are immune from suit under the Foreign Sovereign Immunities Act ("FSIA"). The general rule under the FSIA is that foreign states, including their agencies and instrumentalities, are immune from suit brought in U.S. courts unless one of the statute's exceptions applies. *See* 28 U.S.C. § 1604. The Receiver seeks to apply the "commercial activity" exception, which provides that foreign states are not immune from actions based on commercial activity that has a jurisdictional nexus with the United States. *See* 28 U.S.C. § 1605(a)(2). Given the information available to the Court at this time, the Court need not decide whether LFICO's actions fall under the commercial activities exception.

The parties also dispute whether a preliminary injunction falls within the scope of FSIA's prohibition of "attachment." The FSIA provision at issue states: "[P]roperty in the United States of a foreign state shall be immune from attachment[,] arrest[,] and execution except as provided in sections [not applicable here]." 28 U.S.C. § 1609. The Fifth Circuit has interpreted an injunction to be an unlawful "attachment" under the statute. *See Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174 (5th Cir. 1989) (equating "prejudgment attachment" with "*an injunction* or more traditional methods of attachment" (emphasis added)). Again, the Court does not reach this issue because it holds that the Receiver has not otherwise shown a likelihood of success on the merits.

The Court notes that if it were to reach the FSIA issues, it would most likely hold that the FSIA provision does not apply. The FSIA bars attachments of foreign property. However, the very premise of a TUFTA suit is that the transferee does not rightfully own the funds at issue. Rather, because the transfer was fraudulent, legal and equitable title did not pass to the transferee with the funds. Thus, if the Receiver had shown a likelihood of success on the merits of the fraudulent transfer claim, the Court would likely not afford FSIA anti-attachment protection. *Cf. Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 252 (2d Cir. 1999) (holding no FSIA anti-attachment protection where defendant had no legal right to the property at issue).

ORDER – PAGE 5

to enjoin LIA for LFICO's actions. *Cf. Carroll v. Stettler*, 2010 WL 4611450, at *3 (E.D. Pa. 2010) (refusing to do veil-piercing analysis under Pennsylvania's uniform fraudulent transfer act where plaintiff alleged that individual defendants received monetary profits from the transfer to defendant corporation); *Esse v. Empire Energy III, Ltd.*, 333 S.W.3d 166, 180-81 (Tex. App. – Hous. 2010, pet. denied) (finding liable controlling shareholders under TUFTA without doing a veil-piercing analysis). However, other than LIA's status as LFICO's shareholder, the Receiver made no showing that LIA was an entity "for whose benefit the transfer was made." There is no evidence that LIA directed LFICO to redeem the CDs, and there is no evidence that LFICO redeemed the CDs specifically to benefit LIA. Indeed, the evidence indicates that LFICO redeemed the CDs to improve its own liquidity in the face of poor investment performance of other investments in an economic downturn. *See* Direct Testimony Karyl Van Tassel, Ex. KVT-19, at 7 [46-10]; Tr. of Prelim. Inj. Hr'g, Jan. 27, 2012, at 65-66. There is no evidence that LFICO distributed any CD proceeds upstream to LIA as dividends, and there certainly is no evidence that any of the frozen funds represent CD proceeds. On this record, the Court simply cannot find that a parent-subsidiary relationship alone is enough to establish that LFICO redeemed its CDs for LIA's benefit.

Moreover, the Court is unconvinced that the TUFTA provision grants courts license to disregard the corporate separateness of entities without an adequate showing that the Court can pierce the corporate veil. *See In re Hansen*, 341 B.R. 638, 644-46 (Bankr. N.D. Ill. 2006) (collecting cases nationwide and ultimately holding that like-worded provision in Bankruptcy Code requires alter ego showing).

The Court finds the Bankruptcy Judge's opinion in *In re Hansen* to be well-reasoned. It explains:

> The problem with . . . the few other decisions authorizing this sort of status-based recovery is that they ignore the fundamental nature of corporations. . . . [A] corporation is a legal entity separate from its shareholders, officers, and directors. . . . Only rarely will that separate existence be disregarded.
>
> Nothing in section 550(a)(1) [of the Bankruptcy Code, exactly worded like the TUFTA provision at issue,] indicates that corporate form can be thrust aside and all voidable transfers to a corporation recovered from its shareholders on the mere assumption that shareholders somehow automatically 'benefit' from such transfers. If corporate existence is to be observed, transfers cannot be recovered even from a shareholder who by virtue of his majority ownership ostensibly 'controls' the corporation. Something more than mere status as a shareholder, officer, or director must be shown.
>
> The better view – and the one consistent with corporate law – is that shareholders, officers, and directors are not liable for transfers to their corporation unless they actually received distributions of the transferred property . . . or a showing can be made to pierce the corporate veil.

*Id.* at 645-46 (internal citations omitted). In fact, the two Uniform Fraudulent Transfer Act cases that hold otherwise are factually distinguishable.[6] Thus, the Court proceeds to a veil-piercing analysis.

### B. In its Veil Piercing Analysis, the Court Applies the Law of the Forum

Defendants argue that the Court should perform the veil piercing analysis under Libyan law. *See* Tr. of Prelim. Inj. Hr'g 51-52; Defs.' Surreply Opp'n to Receiver's Appl. Prelim. Inj. 9 [54-1]. As the party asserting the propriety of foreign law, Defendants have

---

[6]In *Esse*, the controlling shareholders who were found liable controlled both the transferor company and the transferee company. *See Esse*, 333 S.W.3d at 181. Here, there is no evidence that LIA controlled LFICO or directed the CD redemption. In *Carroll*, plaintiffs alleged that the individual defendants received $54,000 and $37,001 in profits from the fraudulent transfers. *Carroll*, 2010 WL 4611450, at *3. Here, there is no evidence that LIA received any of the CD proceeds.

ORDER – PAGE 7

the burden of proving its substance with reasonable certainty.  *See, e.g.*, *In re Avantel, S.A.*, 343 F.3d 311, 321-22 (5th Cir. 2003) (citing *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990)); *Starlek, L.L.C. v. Arnold*, 2000 WL 330186, at *2 (Tex. App. – Dallas 2000, no pet.) (citing *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 (Tex. App. – Hous. [14th Dist.] 1995, writ dism'd w.o.j.), *abrogated on other grounds by Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349 (Tex. App. – Hous. [14th Dist.] 2003, no pet.).[7]  However, because Defendants did not provide any proof as to the content of Libyan law before the Court closed the evidentiary record,[8] the Court applies the law of the forum.  *See, e.g.*, *id.* at 322 ("[W]e[, the Fifth Circuit,] previously noted that it is generally agreed that 'the law of the forum should apply when foreign law is not proved.'"

---

[7]It is unclear whether this is a matter of proof governed by the Federal Rules of Civil Procedure or Texas choice of law rules.  *Compare Int'l Interests, L.P. v. Hardy*, 448 F.3d 303, 306 (5th Cir. 2006) ("[A] federal court must follow the choice of law rules of the forum state . . . .") *with* FED. R. CIV. P. 44.1.  In any event, the result would be the same, so the Court will not decide this issue.

[8]The comments to Federal Rule of Civil Procedure 44.1 state that the Court is free to insist on a complete presentation of the substance of foreign law by counsel, and that the Court is not obligated to take judicial notice of foreign law.  *See* 1966 Advisory Committee Notes, FED. R. CIV. P. 44.1.  The Court closed the evidentiary record at the preliminary injunction hearing on January 27, 2012.  *See* Tr. of Prelim. Inj. Hr'g 29.  While the Court granted the parties leave to file post-hearing letters or briefs, it limited the scope of such documents to the legal question of how to proceed under foreign law in the absence of evidence of the content of such law.  *See* Tr. of Prelim. Inj. Hr'g 93 ("If anybody wants to provide supplemental authority on what I do if I determine that foreign law applies but there is no proof in front of me as to the content of the foreign law, why don't y'all do that . . . .").  Accordingly, the Court will not consider the parties' post-hearing attempts to prove the content of Libyan law.  The Court notes that even if it were to consider the content of Libyan law, it would not change the result the Court reaches because Libyan law recognizes corporate veil-piercing only in the bankruptcy context.  *See* Decl. Aref Kashar, App. Supp. Defs.' Post-Hr'g Brief Addressing Issues Raised at Prelim. Inj. Hr'g 59-60 [65].

(quoting *Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales v. Bostrom*, 347 F.2d 168, 174-75 n.3 (5th Cir. 1965))); *Banque Libanaise*, 915 F.2d at 1006 ("The law clearly states that absent sufficient proof to establish with reasonable certainty the substance of the foreign principles of law, the district court should apply the law of the forum." (citing authorities)); *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex. 1963) (presuming Alabama law on res judicata is same as Texas law where movant did not present proof as to substance of Alabama law or request, as is possible in Texas state court, that the court take judicial notice of Alabama's law). Thus, the Court will apply Texas alter ego law.

### *C. The Receiver Has Not Shown That LFICO is LIA's Alter Ego*

In Texas, piercing the corporate veil requires a showing that the owner is "using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations." *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 340 (Tex. 1968) (quoting *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 202 (Tex. 1962)). "There must be something more than mere unity of financial interest, ownership and control for a court to treat the subsidiary as the alter ego of the parent and make the parent liable for the subsidiary's tort." *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984) (quoting *Hanson Sw. Corp. v. Dal-Mac Constr. Co.*, 554 S.W.2d 712 (Tex. App. – San Antonio 1966, writ ref'd n.r.e.)) (italics omitted). Indeed, plaintiff must show that the subsidiary "is organized and operated as a mere tool or business conduit of [its parent] corporation," *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986), *superseded in part on other grounds by* TEX. BUS. CORP. ACT art. 2.21 *as recognized in W.*

*Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 68 (5th Cir. 1994),[9] so that "there exists such unity between [the two corporations] that [they] cease[] to be separate." *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990) (citing *Castleberry*, 721 S.W.2d at 272). Alter ego liability is appropriate where "holding only the [subsidiary] corporation liable would result in injustice." *SSP Partners v. Gladstrong Inv. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008) (quoting *Castleberry*, 721 S.W.2d at 272).

Here, as evidence of alter ego status, the Receiver points to (a) bank records from LIA's Citibank account that list LFICO as an "a.k.a." of LIA, (b) United Nations and United Kingdom documents stating the same thing, (c) the fact that Abdulfatah Sharif was Stanford's single point of contact for both LIA and LFICO, (d) the fact that LIA owns 100% of LFICO, and (e) Libyan government documents that set out LIA's duty to manage and invest LFICO's assets and include LFICO's assets in LIA's assets. However, the Court is not persuaded that this evidence establishes an alter ego relationship between LIA and LFICO. The Court gives little, if any, weight to the documents listed in items (a) and (b) because the Receiver did not present any evidence as to the information the alleged authors relied upon in characterizing LFICO as an alias of LIA. Additionally, item (c) is

---

[9]On January 1, 2010, the Texas Business Corporation Act art. 2.21 was recodified as the Texas Business Organizations Code §§ 21.223-21.226. Via these provisions, in 1989 the Texas legislature abrogated *Castleberry* to the extent that a veil-piercing analysis now requires a showing of actual fraud in cases involving a corporation's contractual obligations. *See, e.g.*, *Acceptance Indem. Ins. Co. v. Maltez*, 619 F.Supp.2d 289, 301 (S.D. Tex. 2008) (discussing the Texas legislature's response to *Castleberry*). Because this case sounds in tort, rather than contract, *see, e.g.*, *In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App. – Dallas 2005, no pet.) ("The fraudulent transfer of assets is a tort."), *Castleberry*'s alter ego standard is instructive.

unpersuasive because Defendants produced evidence that Sharif was part of neither LIA nor LFICO, but rather was associated with another Libyan entity. *See* Tr. of Prelim. Inj. Hr'g 73-74. The rest of the evidence is similarly insufficient to show a relationship any greater than that which is normally associated with parent and subsidiary companies.

In contrast, Defendants produced the affidavits of Mohamed Layas, LIA's Chairman [39], and Nagmeddin Hemali Mokhtar, LFICO's Chairman and Managing Director [56]. Layas testifies that:

> LIA and LFICO have separate boards of directors and there are no interlocks in the boards of directors of LIA and LFICO. LIA is not responsible for controlling or managing specific activities or transactions at the subsidiary level. These tasks are the responsibility of LFICO's own board of directors and management, which have independent authority to conduct LFICO's investment activities. . . . LIA did not play any role in connection with LFICO's investment with [Stanford]. LIA is the account holder of the bank accounts at Citibank N.A. . . . LFICO is not and has never been a joint or co-account holder of those accounts. LFICO has no interest in or control over those accounts.

Aff. Mohamed Layas 2-3. Mokhtar avers the same, *see* Aff. Nagmeddin Hemali Mokhtar 2-3, and the Receiver has not shown otherwise.

On this record, the Court finds Defendants' evidence more persuasive. Layas and Mokhtar directly address the pertinent alter ego factors and demonstrate that LFICO is not LIA's alter ego. The Receiver's evidence is, at best, secondary evidence that might support an inference of some degree of control greater than a normal parent-subsidiary relationship. While the Court acknowledges the difficulty the Receiver faces in obtaining evidence regarding Libyan institutions during the current turmoil in Libya, the Court must nonetheless

decide the issues based on the evidence before it. On this record the Court must find that LFICO is not LIA's alter ego.

Thus, the Receiver has not clearly shown that he is likely to succeed on the merits of his claim. Because the Receiver has failed to meet prong (3) of the preliminary injunction standard, the Court need not address the remaining factors. *See Canal Auth.*, 489 F.2d at 572 (describing the four factors as "prerequisites" to the issuance of a preliminary injunction).

## CONCLUSION

The Court does not decide this in a vacuum. The Court is acutely aware of the dire plight of many of the Stanford investors and is equally aware of the importance of the frozen assets to the Receiver's hopes to distribute funds to those investors. However, if the Court were to rule in favor of the Receiver solely for those reasons, the Court would be nothing more than a judicial Robin Hood – well-meaning, but nonetheless a thief. Moreover, notwithstanding LFICO's efforts to redeem its CDs, it still remains the biggest net loser investor in the Stanford scheme.

The Court is not called on to determine who, in good conscience, most deserves or needs the money. Rather, the Court must decide based on the law and evidence before it. Because the Receiver has failed to show that he is likely to succeed on the merits of his claim, the Court denies his motion for preliminary injunction.

ORDER – PAGE 12

Signed February 29, 2012.

_____
David C. Godbey
United States District Judge